696 A.2d 1129

TOWNSHIP OF PARSIPPANY–TROY HILLS, A MUNICIPAL COR-
PORATION IN THE COUNTY OF MORRIS AND STATE OF
NEW JERSEY, PLAINTIFF–RESPONDENT, v. LISBON CON-
TRACTORS, INC., A PENNSYLVANIA CORPORATION AUTHO-
RIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY,
DEFENDANT–APPELLANT, AND VICTORY ENVIRONMEN-
TAL SERVICES, INC., A DELAWARE CORPORATION AUTHO-
RIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY;
THE TOWN OF PHILLIPSBURG, A MUNICIPAL CORPORA-
TION IN THE COUNTY OF WARREN AND THE STATE OF
NEW JERSEY; AND JOSEPH VAUGHAN, DEFENDANTS.

LISBON CONTRACTORS, INC., THIRD–PARTY PLAINTIFF, v. JO-
SEPH VAUGHAN, THIRD–PARTY DEFENDANT/FOURTH–
PARTY PLAINTIFF, v. RUSSELL REID WASTE HAULING
AND DISPOSAL SERVICE CO., INC., FOURTH–PARTY DEFEN-
DANT.

Superior Court of New Jersey
Appellate Division

Argued March 26, 1997—Decided July 31, 1997.

364

Before Judges SKILLMAN, A.A. RODRIGUEZ and CUFF.

*Patricia L. Talcott* argued the cause for appellant (*Kaplin, Stewart, Meloff, Reiter & Stein,* attorneys; *Ms. Talcott* on the brief).

*Marc J. Friedman* argued the cause for respondent (*Rich & Friedman,* attorneys; *Alan J. Rich,* of counsel; *Janet B. Malay* on the brief).

No other parties participated in this appeal.

CUFF, J.A.D.

In this case, we must determine whether plaintiff Township of Parsippany–Troy Hills (Parsippany–Troy Hills), which disposed of sludge from a sewage treatment facility of another municipality, is entitled to assert a lien pursuant to the Municipal Mechanics' Lien Law when it was not paid for the work it performed.

The facts are largely undisputed. The Township of Phillipsburg (Phillipsburg) awarded a contract to defendant Lisbon Contractors, Inc. (Lisbon) to expand and upgrade its municipal wastewater treatment plant. Part of the work under this contract included the removal of sludge from anaerobic digesters in order that this equipment could be renovated and rehabilitated. Lisbon executed a contract with defendant Victory Environmental Services, Inc. (Victory) to empty and dispose of the contents and thoroughly clean the interior of two existing anaerobic digester tanks at the facility. Victory, in turn, entered a contract with defendant Russell Reid Waste Hauling and Disposal Service Co., Inc. to haul the contents of the tanks, commonly referred to as sludge, to the wastewater treatment facility owned and operated by Parsippany–Troy Hills. Victory made arrangements directly with Parsippany–Troy Hills to accept and process the sludge from the Phillipsburg facility. Parsippany–Troy Hills willingly agreed to accept the sludge because it regularly disposed of sludge from the Phillipsburg facility and was familiar with its characteristics.

In May 1990, Parsippany–Troy Hills began to accept and process the sludge. Invoices were issued to Victory monthly. Victory made no payments until November 1990 when it forwarded $5000 to Parsippany–Troy Hills. By November 27, 1990, Lisbon had paid Victory in full for all amounts owed under the Lisbon–Victory subcontract. All payments were preceded by the submission by Victory to Lisbon of certificates for payment which contained a certification that "all labor, equipment, materials have been paid by the Subcontractor for Work for which previous Certificates for Payment were issued and payments received from the General Contractor. . . ."

The work performed by Victory was related solely to the initial phases of Lisbon's work on the Phillipsburg facility. Lisbon performed work at the Phillipsburg facility through 1991. Phillipsburg made its last payment to Lisbon in March 1992. On January 7, 1992, more than one year after Parsippany–Troy Hills received its only payment from Victory, it filed a Notice of Lien Claim pursuant to *N.J.S.A.* 2A:44–132. By this filing, Parsippany–Troy Hills asserted a claim against funds due and owing Lisbon from Phillipsburg. Parsippany–Troy Hills asserts that it is owed $100,281.82 by Victory. In view of the lien claim filed by Parsippany–Troy Hills, Lisbon posted a bond pursuant to *N.J.S.A.* 2A:44–130 in the amount of $200,563.64. Final payment was then made to Lisbon.

Parsippany–Troy Hills filed a complaint against Lisbon and Victory to collect the fees owed to it. In the Second Count of the Complaint, Parsippany–Troy Hills sought a judgment against Phillipsburg to enforce its notice of mechanics' lien.[1] In response to cross-motions for summary judgment filed by Parsippany–Troy Hills and Lisbon, the motion judge entered an order granting

---

[1] Lisbon filed a third-party complaint against Joseph Vaughan, president of Victory, who filed a fourth-party complaint against Russell Reid Waste Hauling. Parsippany–Troy Hills subsequently filed an amended complaint which named Vaughan as a direct defendant. The fourth-party complaint was dismissed by order dated March 11, 1996.

plaintiff's motion for summary judgment and entered a judgment in favor of Parsippany–Troy Hills and against Lisbon in the amount of $100,281.82, to be paid from the proceeds of the bond posted by Lisbon. We have not been provided with any oral or written opinion by the motion judge. The form of order submitted by Parsippany–Troy Hills and signed by the motion judge contains the following paragraph:

> ORDERED that as a matter of law plaintiff Township of Parsippany–Troy Hills was a materialman or subcontractor for Victory Environmental Services at all relevant times and thus is a proper lien claimant under *N.J.S.A.* 2A:44–125 and the lien was filed within the time provided by N.J.S.A. 2A:44–132.[2]

Because this order did not dispose of the claims against Vaughan, the motion judge certified this order as final pursuant to *R.* 4:42–2.

On appeal, Lisbon argues that Parsippany–Troy Hills is not a proper lien claimant. It also contends that Parsippany–Troy Hills' notice of lien and complaint are barred by laches. Finally, it insists that there is no support in the record for the amount awarded to Parsippany–Troy Hills.

At the outset, we must comment regarding the absence of an oral or written opinion in this matter. We have stated repeatedly that a motion judge fails to discharge a primary function when findings of fact and conclusions of law are omitted. *R.* 1:6–2(f); *R.* 1:7–4; *Curtis v. Finneran*, 83 *N.J.* 563, 570, 417 *A.*2d 15 (1980). That omission deprives the litigants and this court of the benefit of the motion judge's legal analysis. *In re Will of Marinus*, 201 *N.J.Super.* 329, 338–39, 493 *A.*2d 44 (App.Div.), *certif. denied*, 101 *N.J.* 332, 501 *A.*2d 981 (1985). It also imparts to the process an air of capriciousness which does little to foster confidence in the judicial system.

We also observe that it is of no help to anyone to conclude that Parsippany–Troy Hills is "a materialman or a subcontractor." The terms are not interchangeable and the rules governing each are different.

---

[2] The underscored language was inserted by the motion judge.

Parsippany–Troy Hills filed its lien claim pursuant to the Municipal Mechanics' Lien Law, *N.J.S.A.* 2A:44–125 to –142. *N.J.S.A.* 2A:44–128 [3] defines who may obtain a municipal mechanics' lien.

> Any person who, as laborer, mechanic, materialman, merchant or trader, or subcontractor, in pursuance of or conformity with the terms of any contract for any public improvement made between any person and a public agency as defined in section 2A:44–126 of this title and authorized by law to make contracts for the making of public improvements, performs any labor or furnishes any materials, including the furnishing of oil, gasoline or lubricants and vehicle use, toward the performance or completion of any such contract, shall, on complying with the provisions of sections 2A:44–132 and 2A:44–133 of this title, have a lien for the value of the labor or materials, or both, upon the moneys due or to grow under the contract and in the control of the public agency, to the full value of the claim or demand.

*N.J.S.A.* 2A:44–126 defines "subcontractor" as "a person having a contract under a contractor for the performance of the same work, or any specified part thereof, and also a person having such a contract with a subcontractor, for the performance of the same work or any specified part thereof."

■■■ All mechanics' lien laws are in derogation of the common law and should be strictly construed. *Morris County Indus. Park v. Thomas Nicol Co.*, 35 *N.J.* 522, 526, 173 *A.*2d 414 (1961); *see also* Eugene McQuillin, *Municipal Corporations* § 37.182 (3d Ed.1997). Consistent with this principle, a lien claimant's relationship to the project will be scrutinized to assure that the statute's protection is accorded only to those envisioned by the Legislature. Moreover, a court must discern whether a lien claimant qualifies as a subcontractor or a supplier of material because these are distinct and exclusive classes. *Morris County Indus. Park, supra*, 35 *N.J.* at 533, 173 *A.*2d 414.

■■■ Parsippany–Troy Hills argues that it unquestionably qualifies as a "subcontractor" as defined by *N.J.S.A.* 2A:44–126

---

[3] This statute was amended by *P.L.* 1996, c. 81, § 1, which was effective on August 24, 1996. The provision relied upon by Parsippany–Troy Hills has been redesignated as *N.J.S.A.* 2A:44–128a. There are no material textual changes to this section.

because that definition includes a sub-subcontractor. We agree that the statutory definition encompasses a sub-subcontractor; however, that does not end the inquiry. An examination of section 126 reveals that a subcontractor and a sub-subcontractor are defined by the nature of the work performed, not by contractual status. In *Morris County Indus. Park,* Justice Hall explained:

> The term [subcontractor] is thus defined in its technical and precise sense as established by usage in the building trades, 17 *C.J.S. Contracts* § 11, and not in a broad or loose context.... The emphasis is, of course, on the subcontractor being engaged to do all or some part of the *work, i.e.,* the construction itself, involving at least some labor in the installation of materials and not merely the supplying of materials.
>
> [*Morris County Indus. Park, supra,* 35 *N.J.* at 533–34, 173 *A.*2d 414.]

*See also* 53 *Am.Jur.2d Mechanics' Liens* § 69 (1996).

In *Morris County,* the plaintiff supplied dirt from its pit to Kitchell, which had a contract with Thomas Nicol Co. to provide fill needed for Nicol's work as a general contractor for the New Jersey Turnpike Authority. Kitchell did no more than deliver the dirt supplied to it by Morris County to the site designated by Nicol. It did not process the dirt in any manner at its facility or at the site. Under these circumstances, the Court found that Kitchell and Morris County were materialmen, not subcontractors. *Id.* at 534, 173 *A.*2d 414. Neither entity was a subcontractor, despite a contractual agreement between them to supply dirt, because neither did any work on the road project.

In *Morris County,* the Court suggested that an entity could qualify as a subcontractor for purposes of the Municipal Mechanics' Lien Law under some circumstances, even if work is performed off-site. *Id.* at 534, 173 *A.*2d 414; *see also West Bank Oil, Inc. v. Hartford Accident and Indem. Co.,* 205 *N.J.Super.* 56, 63, 500 *A.*2d 32 (App.Div.1985). *Morris County* and *West Bank Oil* each refers to *Theisen v. County of Los Angeles,* 54 *Cal.*2d 170, 5 *Cal.Rptr.* 161, 352 *P.*2d 529 (1960), in which a fabricator of doors in accordance with plans and specifications supplied by the general contractor was considered a subcontractor for purposes of a mechanics' lien law. The court responded that the manufacturer

of sixty-four custom-made doors was considered a subcontractor rather than a materialman because it furnished a definite and substantial part of the improvement in accordance with plans and specifications. *Id.* at 537. That the work was done off-premises was irrelevant. *Ibid.*

Applying these principles, we conclude that Parsippany–Troy Hills should not be considered a subcontractor for purposes of the Municipal Mechanics' Lien Law. We have not been provided with the contract between Phillipsburg and Victory. We have been supplied with the contract between Lisbon and Victory. It provides in relevant part that Victory will "empty and dispose of digester contents...." The task was described to include removal and disposal of all material of any nature from the interior of the vessels. Presumably, this work is the same work that Lisbon has been retained to do. We hesitate, however, to conclude that the ordinary process of sludge disposal falls within the category of the "work" or "some part of the work" for which Lisbon was specifically retained by Phillipsburg. *Morris County, supra,* 35 *N.J.* at 533–34, 173 *A.2d* 414. *N.J.S.A.* 2A:44–126 contemplates protection only for work that is specific to the contract, would not have been performed but for the contract, and results in some labor which leads directly to the finished product. That did not occur here. Sludge is an ordinary by-product of the wastewater treatment process performed by Phillipsburg on a periodic basis. In fact, Parsippany–Troy Hills has received and treated this sludge in the past. In view of the mandate that we interpret narrowly the scope of the Municipal Mechanics' Lien Law, we find no reason to accord Parsippany–Troy Hills enhanced debt-collection protection simply because the sludge required disposal due to renovations of the facility rather than through the ordinary operations of the plant.

We also conclude that Parsippany–Troy Hills does not qualify as a materialman. From *Morris County* and *West Bank,* we discern that a materialman or a supplier is one who provides a product, such as the dirt in *Morris County* or the asphalt in *West*

*Bank,* which becomes a part of the whole. Parsippany–Troy Hills has not provided a product which became a part of the wastewater treatment plant. Parsippany–Troy Hills has simply provided a service which allows the basic work of renovation and rehabilitation to proceed.

Having decided that Parsippany–Troy Hills is neither a subcontractor nor a materialman for purposes of the Municipal Mechanics' Lien Law, we need not address the thorny issue of whether its tardy debt collection efforts barred its claim against Lisbon.

Reversed.